UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

RIGOBERTO ESCOBAR SALGADO,
Petitioner,
v.
WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,
Respondents.

No. 5:26-cv-05441-JDE

ORDER REGARDING PETITION

## I.
## PROCEEDINGS

On September 17, 2026, Rigoberto Escobar Salgado ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his arrest and detention by immigration authorities under the Fifth Amendment, 8 U.S.C. §§ 1226(a), 1357, 8 C.F.R. §§ 287.8, 287.3, 287.5, and the "Bautista Relief Orders," substantively seeking immediate release or in the alternative, an individualized custody redetermination hearing before a neutral decisionmaker, at which the government would bear the burden of justifying detention by clear and convincing evidence. Dkt. 1 ("Petition" or "Pet.") at 57-58. On September 25, 2026, Respondents filed a Response. Dkt. 7

("Resp."). On September 28, 2026, Petitioner filed a Reply. Dkt. 8. For the reasons discussed below, the Petition is denied.

**II.**

**BACKGROUND**

Petitioner is a native and citizen of Mexico. Pet. ¶ 2. He entered the United States without inspection several times, most recently in March 2006. Id. ¶¶ 22-24. He was not apprehended, inspected, lawfully admitted, or paroled upon entry. Id. ¶ 24. In 2007, Petitioner pled guilty to misdemeanor driving under the influence of alcohol and misdemeanor driving with a blood alcohol content of .08% or more. Id. ¶¶ 30-31. He has had no further interactions with law enforcement, except for his immigration arrest notated below. Id. ¶ 32.

On November 7, 2011, Petitioner's U.S. citizen daughter submitted Form I-130 petitions for alien relative for her parents. Pet. ¶ 33. On May 30, 2012, the United States Citizenship and Immigration Services approved the Form I-130 for Petitioner. Id.

On December 18, 2025, Petitioner was detained by immigration authorities while visiting his brother at an urgent care medical clinic in Anaheim, California. Pet. ¶¶ 34, 37. On December 20, 2025, Petitioner was served with a Notice to Appeal, charging him with removability pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i). Id. ¶ 49, Exh. 1.

In March 2026, Petitioner filed applications for asylum and withholding of removal, which he then withdrew to be considered for voluntary departure. Pet. ¶¶ 51, 53-54, Exh. 13. On April 7, 2026, Petitioner's request for voluntary departure was denied and he was ordered removed to Mexico. Id. ¶¶ 53-54, Exh. 13. Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), which remains pending. Id. ¶ 55, Exh. 14.

Petitioner was scheduled for a custody redetermination hearing on June 29, 2026, but the request was withdrawn because neither he nor his counsel

received advance notice. Pet. ¶¶ 61-63; Resp., Exh. 2. Petitioner received a Rodriguez bond hearing on July 27, 2026, at which the immigration judge ("IJ") denied bond in a detailed decision, finding by "clear and convincing evidence" that Petitioner is a flight risk and no bond is appropriate. Resp., Exh. 3. Petitioner filed an appeal, which remains pending. Pet. ¶ 73.

## III.

## DISCUSSION

A petitioner seeking habeas relief must demonstrate that he or she is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

"It is the petitioner's burden to prove his custody is in violation of the Constitution, laws[,] or treaties of the United States." Snook v. Wood, 89 F.3d 605, 609 (9th Cir. 1996) (as amended). Petitioner has failed to carry his burden to prove he is currently entitled to federal habeas relief.

### A. Challenges to Initial Arrest

As the Supreme Court has explained, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." United States ex. rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citation omitted). "The dispositive question in this habeas proceeding is not whether Petitioner's arrest was procedurally defective, but whether he is presently entitled to release

from custody." Liu v. Janecha, 2026 WL 2178768, at *2 (C.D. Cal. July 27, 2026). Thus, the Court turns to Petitioner's claim that his detention violates due process. See Chacon v. Mullin, 2026 WL 2127177, at *3 (C.D. Cal. July 21, 2026) (finding that even assuming, without deciding, that the government failed to comply with the statutory or regulatory requirements governing the initiation of petitioner's custody, petitioner had not shown that release from custody is an available remedy, citing Bilokumsky).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001). Due process requires that an individual be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." See Mathews v. Eldridge, 424 U.S. 319, 333, 348 (1976) (citation omitted). The Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Petitioner contends that his long-term U.S. residency created a substantial liberty interest protected by the Fifth Amendment. However, even assuming a protected liberty interest existed, Petitioner has not shown that the post-detention process here was inadequate to safeguard that liberty interest and mitigate the risk of erroneous deprivation. Petitioner received a bond hearing at which the government bore the burden of proving he was a danger or flight risk and he had the opportunity to appeal the outcome of that bond decision to the BIA. Further, his detention has become "prolonged," at least in

part, because he has challenged the IJ's removal order. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022). The government has a "strong interest" in enforcing the immigration laws, which "is especially true when it comes to determining whether removable [noncitizens] must be released on bond during the pendency of removal proceedings." Id. Such interests "only increase with the passage of time," as "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing [a noncitizen's] ultimate removal" and the risk of a detainee absconding "inevitably escalates as the time for removal becomes more imminent." Id. Here, as noted, the IJ found Petitioner was a flight risk; thus, his continued detention serves the government's interest in ensuring his appearance at future proceedings.

Although Petitioner cites other district court decisions ordering release based on the facts in those cases, the undersigned finds on the facts here, immediate release via a habeas petition is not warranted. Again, assuming a liberty interest, Petitioner was provided a Notice to Appear shortly after his arrest that advised him in writing of the basis for his arrest and the removal proceedings, and has had an opportunity to challenge his detention at a bond hearing, where he was represented by counsel, presented evidence, and had the opportunity to appeal the bond decision to the BIA. The Court finds that the process Petitioner received post-deprivation was sufficient to protect his asserted liberty interest here. See Aguilar v. Semaia, 2026 WL 166906, at *4-5 (C.D. Cal. Jan. 16, 2026) (denying request for immediate release from immigration detention in light of post-detention process provided, including a bond hearing); F.R.V. v. Semaia, 2026 WL 852064, at *2-3 (C.D. Cal. Mar. 24, 2026) (finding petitioner failed to show a likelihood of success on her due process claim where she was provided a post-detention bond hearing); Singh v. Bowen, 2026 WL 485760, at *4-5 (C.D. Cal. Feb. 19, 2026) (same); see also

Rodriguez Diaz, 53 F.4th at 1208 (explaining that courts must "consider the process [petitioner] received [while detained]" and "the further process that was available to him").

Accordingly, the Court finds Petitioner has not shown the Due Process Clause compels further relief.

**B. Challenge to Bond Decision**

Petitioner also challenges the IJ's July 2026 bond decision. However, Petitioner has not exhausted his administrative remedies.

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); see also Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). The exhaustion requirement is not jurisdictional, but prudential exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (as amended).

Exhaustion may be waived when administrative remedies are inadequate or inefficacious, pursuit of such remedies would be futile, irreparable injury would result, or those proceedings would be void. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); Ward, 678 F.3d at 1045. "The party moving the court to waive prudential exhaustion requirements bears the burden of

demonstrating that at least one of [the] Laing factors applies." Chavez v. Noem, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (citation omitted).

Detainees subject to Section 1226 who are dissatisfied with the IJ's bond determination may file an administrative appeal with the BIA. See Leonardo, 646 F.3d at 1160. "If they remain dissatisfied, they may file a petition for habeas corpus in the district court." Id. Petitioners should "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." Id.; see also Rojas-Garcia v. Ashcroft, 339 F.3d 814, 819 (9th Cir. 2003) ("[T]he petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal[.]").

Prudential exhaustion applies here. Petitioner has appealed the IJ's decision, which remains pending. Each of the prudential exhaustion factors weigh in favor of requiring exhaustion. First, Petitioner challenges multiple aspects of the IJ's decision, arguing that the IJ "abused his discretion by (A) disregarding Petitioner's substantial evidence of U.S. family and community ties in favor of evidence irrelevant to the issue of flight, (B) misstating the record to support his flight risk determination, and (C) failing to hold the Department to its burden of proof." Pet. ¶ 102. But Petitioner, who was represented by counsel at the bond hearing, does not explain why those challenges, if warranted, cannot be addressed and corrected in the context of an appeal before the BIA, where the factual record can and should be properly developed. See Executive Office for Immigration Review, Part II - OCIJ Immigration Court Practice Manual, Chap. 8.3(e)(7) ("Usually, the [IJ's] decision is rendered orally. If either party appeals, the [IJ] prepares a written decision based on notes from the hearing, however the record will not be transcribed.") available at https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm. Second, waiving exhaustion in this instance would

encourage others to deliberately bypass the established administrative scheme, which contemplates appeals with the BIA, not the district court, in the first instance. Third, the outcome of such appeal may provide Petitioner the relief sought in this proceeding and eliminate the need for judicial review.

Further, Petitioner has not shown exhaustion should be waived here. That Petitioner purports to raise constitutional challenges to the bond decision, such challenges do not compel a waiver of exhaustion because the BIA is "well-equipped" to consider challenges to the IJ's decision and may provide the relief Petitioner seeks. Kanar v. Semaia, 2026 WL 966569, at *5 (C.D. Cal. Apr. 7, 2026) (citation omitted). To the extent Petitioner challenges how the IJ considered the evidence, this is a case-specific claim about the adequacy of one decision in one proceeding, exactly the type of claim the BIA is designed to review. See Liu, 2026 WL 2178768, at *4.

The Court also finds Petitioner's arguments that exhaustion would be futile because statistical data indicates "the BIA now functions to rubberstamp IJ bond denials and facilitate noncitizen removal" (Pet. ¶ 20 (citation omitted)) unpersuasive, as Petitioner has not demonstrated any specific policy or BIA ruling that would render appeal in his particular case futile.

Petitioner also has not shown he will suffer irreparable injury that he, in particular, will suffer by waiting for a BIA decision. "[I]f the ordinary delay of administrative review—and its corresponding extension of a petitioner's detention—constituted 'irreparable injury' sufficient to excuse exhaustion, then it would be excused in every bond denial." Liu, 2026 WL 2178768, at *4. Excusing exhaustion on this basis "would cause the exception to swallow the rule." Yu v. Noem, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026), adopted by 2026 WL 1188854 (E.D. Cal. Apr. 30, 2026). While the time needed to complete a BIA appeal may tip against enforcement of exhaustion in some cases with compelling facts, it is not necessarily enough on its own to

warrant waiving the exhaustion requirement in every case and is not warranted in this case.

Accordingly, Petitioner's challenges to his bond decision should be dismissed without prejudice for failure to exhaust administrative remedies.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that Judgment shall be entered denying the Petition and dismissing Petitioner's challenges to his initial arrest with prejudice and challenge to the July 27, 2026 bond decision without prejudice.

Dated: October 15, 2026____

JOHN D. EARLY
United States Magistrate Judge